UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **HOWARD WILLIS, # 47323,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:24-cv-00021 |
| | ) |
| **ABIGAIL WHITTAMORE, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Howard Willis, who is currently in custody of the Riverbend Maximum Security Institution in Nashville, Tennessee, filed a pro se complaint alleging violations of his civil rights. (Doc. No. 1). Willis has since filed an Amended Complaint (Doc. No. 15) and Second Amended Complaint (Doc. No. 26). The Second Amended Complaint is now before the Court for initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

### I. SCREENING STANDARDS

Under 28 U.S.C. § 1915A, the Court must conduct an initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016), and accept a plaintiff's factual allegations as true unless they are entirely without credibility, Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007).

1

## II. FACTUAL ALLEGATIONS AND CLAIMS

Willis names nine Defendants: Corporal Abigail Whittamore, Sergeant Raymond Moyer, Warden Zachary Pound, Warden of Security Corvelli Haynes, Unit 2 Manager Dennis Davis, Unit 2 Counselor Warren Tate, Unit 2 Sergeant Colt Lloyd, Warden of Treatment Michael Keys, and Tennessee Department of Corrections Commissioner Frank Strada. (Doc. No. 26 at 2−3). All Defendants are sued in their official capacities only. (Id.).

Willis alleges that he has a hearing disability and uses hearing aids. (Id. at 13). On May 20, 2023, Corporal Whittamore escorted Willis to the visitation gallery where he was to meet visitors from the community. (Id. at 19). After Corporal Whittamore left the room, Willis followed her out and asked her for a chair, which he customarily used to sit directly across from his visitors due to his hearing impairment. (Id. at 20). Corporal Whittamore denied his request. (Id.). Willis alleges that Corporal Whittamore knew about his hearing disability and denied his request for a chair "so he could not have a meaningful visitation." (Id.). Willis found a chair elsewhere in the visitation room, moved it to where he wanted it, and completed his visit. (Id.).

Two days later, Willis received a disciplinary complaint for defiance based on the visitation incident. (Id.). Non-defendant Officer Mary Anna Turk reported the incident and drafted the disciplinary complaint. (Id.). Warden Pound approved the complaint for filing. (Id. at 10). The disciplinary complaint[1] reported,

> [Willis] asked corporal Abigail Whittamore if he could use a chair for visitation so he could sit directly in front of the visitors. [] Willis was instructed by Corporal Whittamore that it was not allowed and inmates are only permitted to sit in the allotted visitation chairs. [] Willis proceeded to roll his eyes and walked away from

---

[1] At screening, as when evaluating a motion to dismiss, "a court may consider exhibits attached to the complaint, public records, [and] items appearing in the record of the case, . . . so long as they are referred to in the complaint and are central to the claims contained therein." Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016); see Arauz v. Bell, 307 Fed. Appx. 923, 925 n.1 (6th Cir. 2009) ("We are also permitted to consider materials attached to the complaint" for Section 1915A screening).

2

> Corporal Whittamore. Corporal Whittamore went out to unlock the visitation doors for a staff member and during that time, [] Willis proceeded to pull an unapproved chair up directly in front of the visitors.

(Doc. No. 1-1 at 78). Willis alleges that Officer Turk was not present for the incident. (Doc. No. 26 at 20). He further alleges that there was no policy preventing him from getting a chair and that he did not roll his eyes or storm away. (Id. at 20−21).

Sergeant Moyer was the disciplinary hearing officer. During the hearing, Willis told Sergeant Moyer that his assessment of the evidence was "bull shit," accused Sergeant Moyer of following through on a prior threat of a disciplinary infraction, and asserted that Sergeant Moyer and Corporal Whittamore were "having an affair." (Doc. No. 1-1 at 91). Willis was dismissed from the hearing, which was then completed in abstentia. (Id.). Sergeant Moyer found Willis guilty of defiance and sentenced him to a $4 fine, five days in punitive segregation, and a level drop to "B." (Doc. No. 26 at 22). Willis alleges that Sergeant Moyer and Corporal Whittamore met before the hearing to discuss Willis's punishment. (Id.).

Willis appealed the disciplinary sanction. (Id.). Warden Pound and Warden Haynes "held up" the appeal. (Id. at 10). Manager Davis, Counselor Tate, and Sergeant Lloyd reviewed the appeal. (Id. at 9, 22−23). After 44 days in lockdown, Willis was released and told that he won his appeal. (Id. at 11).

On June 8, 2023, Manager Davis signed and distributed an order directing that chairs in the visitation room could be rearranged so that inmates and visitors could face each other. (Id. at 23). On August 7, 2023, Warden Pound issued a memorandum stating, "Effective immediately all inmates and visitors will sit with one seat between then. No chairs will be brought into the visitation gallery for any reason." (Doc. No. 1-1 at 101; Doc. No. 26 at 13). Warden Pound instructed Willis to seek an "AVO" from medical staff if he needed to sit directly in front of his visitors. (Doc. No. 26 at 9). The Second Amended Complaint does not define "AVO," but in his

3

First Amended Complaint, Willis noted that it abbreviates "Administrative Verified Order." (Doc. No. 15 at 19); cf. Meeks v. Tennessee Dep't of Corr., No. , 2010 WL 3522977, at *2 (noting that "AVO" abbreviates "Avoid Verbal Order" and explaining that "[p]rison medical staff issue AVOs to inmates who have a medical reason to avoid a verbal order from a prison official"). Willis alleges that Sergeant Moyer "interfered" with Willis's attempt to get an AVO, though he does not specify how Sergeant Moyer interfered or whether that interference prevented Willis from obtaining an AVO. (Doc. No. 26 at 9)

Willis alleges that Warden Keys is responsible for training staff regarding legal rights of inmates with disabilities. (Doc. No. 26 at 23). He further alleges that all Tennessee Department of Corrections employees are under the direction and control of Commissioner Strada. (Id. at 16).

Willis asserts that all Defendants[2] discriminated against him in violation of the Rehabilitation Act, failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act, deprived him of due process in violation of the Fifth and Fourteenth Amendments, subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and committed perjury by violating the oaths they swore upon employment with the Tennessee Department of Corrections. (Id. at 7−16). He also asserts that Sergeant Moyer sentenced him in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 26 at 8).

### III. ANALYSIS

Willis has stated viable claims against Corporal Whittamore, Sergeant Moyer, and Warden Pound for failure to accommodate his disability in violation of the ADA and Rehabilitation Act.

---

[2] Willis does not assert that Commissioner Strada is directly liable but asserts that he is "responsible for employee actions under the color of the law." (Doc. No. 26 at 16).

4

All other claims will be dismissed. The Court will address his constitutional claims, ADA and Rehabilitation Act claims, and perjury claims in turn.

### A. Constitutional Claims

To the extent he seeks damages, Willis's constitutional claims are necessarily brought pursuant to 42 U.S.C. § 1983. However, because Willis sues all Defendants in their official capacities only, he has effectively sued the State of Tennessee, which is not a "person" subject to suit under Section 1983. Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003). Any claim for damages premised on an alleged Due Process, Eighth Amendment, or Equal Protection violation will therefore be dismissed for failure to state a claim upon which relief may be granted.

To the extent he seeks injunctive relief, Willis has failed to allege any ongoing harm from the alleged Due Process, Eighth Amendment, and Equal Protection violations. (See Doc. No. 26 at 11) ("After 44 days in lock down Mr. Willis was released from lockdown."). Any such claim for injunctive relief will therefore be dismissed as moot. See Cotton v. Mansour, 863 F.2d 1241, 1244−45 (6th Cir. 1988) (holding claim for injunctive relief moot because "[t]here was simply no ongoing violation . . . to enjoin").

### B. ADA and Rehabilitation Act

Willis asserts claims under the ADA and Rehabilitation Act based on three theories: intentional discrimination, failure to accommodate, and retaliation. The Court will address each in turn.

#### 1. Intentional Discrimination

"To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) []he has a disability; (2) []he is otherwise qualified; and (3) []he was being excluded from participation in, denied the benefits of, or subjected to discrimination under

5

the program because of [his] disability." Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). **Intentional** discrimination is required. In other words, Willis must allege "that animus against the protected group was a significant factor" in the Defendant's actions. Id.

Here, Willis does not allege facts from which the Court may infer that any Defendant was motivated by animus towards persons with hearing loss. He has therefore failed to state a claim based on the theory of intentional discrimination.

### 2. Failure to Accommodate

The elements of a failure-to-accommodate claim mirror the elements of an intentional-discrimination claim. See Creech v. Ohio Dep't of Rehab. and Corr., No. 21-3722, 2022 WL 4138415, at *4 (6th Cir. Sept. 13, 2022) ("To state a prima facie case of disability discrimination based on a failure to provide reasonable accommodations, [a plaintiff] must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability."). The practical difference is that a viable failure-to-accommodate claim requires an allegation that the prison denied a "direct and specific" request for reasonable accommodation. Johnson v. Dobbins, No. 22-5301, 2022 WL 16824202, at *3 (6th Cir. Nov. 8, 2022).

Construing the Second Amended Complaint in the light most favorable to Willis, it includes sufficient factual allegations to state claims against Corporal Whittamore, Sergeant Moyer, and Warden Pound under the failure-to-accommodate theory. Willis alleges that he asked Corporal Whittamore to unlock a door so he could get a chair during visitation. (Doc. No. 26 at 20) Willis alleges that Corporal Whittamore knew of his hearing impairment, but she did not allow him to have a chair. (Id.). Willis also alleges that Warden Pound published a rule that has prevented Willis from sitting directly across from visitors. (Id. at 22). And he alleges that Sergeant Moyer has

6

interfered with his attempts to seek a medical exemption. (Id.). These claims shall proceed. Willis does not allege that any other Defendant prevented him from obtaining reasonable accommodation, so his failure-to-accommodate claims against all other Defendants will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Retaliation

Willis asserts that Defendants retaliated against him for exercising his rights under the ADA and the Rehabilitation Act.

The Sixth Circuit has recently held that there is no private right of action for discrimination under the Rehabilitation Act. Smith v. Mich. Dep't of Corr., 159 F.4th 1067, 1082 (6th Cir. 2025), cert. filed (U.S. Feb. 19, 2026) (No. 25-1028).

To state a retaliation claim under the ADA, Willis must allege that "(1) [he] engaged in protected activity; (2) [Defendants] knew of the protected activity; (3) [Defendants] took an adverse action against [him]; and (4) there was a causal connection between the protected activity and the adverse action." M.L. v. Williamson Cnty. Bd. of Ed., 772 Fed. Appx. 287, 291 (6th Cir. 2019). An individual has engaged in "protected activity" for ADA retaliation purposes if he has "opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA. 42 U.S.C. § 12203(a).

Here, Willis does not allege that he faced an adverse action because he "opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a). Willis alleges that he filed a grievance, which is protected activity. (Doc. No. 26 at 4). However,

he does not allege that he faced any adverse action as a result. (Id.). Accordingly, he has failed to state a viable retaliation claim.

### C. Perjury

Willis asserts that Defendants committed perjury by violating their oaths of office. (Doc. No. 26 at 7−16). However, there is no private right of action for perjury. Kim v. City of Ionia, No. 19-1389, 2019 WL 11662557, at *1 (6th Cir. Sept. 17, 2019). These claims will be dismissed for failure to state a claim upon which relief may be granted.

### IV. CONCLUSION

The court has screened the Second Amended Complaint and finds that the Second Amended Complaint states viable ADA and Rehabilitation Act claims against Corporal Whittamore, Sergeant Moyer, and Warden Pound for failing to accommodate Willis's disability. These claims **SHALL PROCEED**.

All other claims are **DISMISSED**. Specifically, all ADA and Rehabilitation Act claims other than those specified above are **DISMISSED** for failure to state a claim upon which relief may be granted. All constitutional claims for damages under 42 U.S.C. § 1983 are **DISMISSED** for failure to state a claim upon which relief may be granted. All constitutional claims for injunctive relief are **DISMISSED** as moot. All claims for perjury are **DISMISSED** for failure to state a claim upon which relief may be granted.

All claims against Defendants Corvelli Haynes, Dennis Davis, Warren Tate, Colt Lloyd, and Frank Strada have been dismissed. The Second Amended Complaint does not assert any claims against Defendants Michael Keys, Kyla Solomon, Shanreka Ward, Djuana Hodges, John & Jane Doe, or Kenneth Nelson. The Clerk **SHALL** terminate these Defendants from the docket.

Willis's request to set the case for trial (Doc. No. 27) is **DENIED** without prejudice. This case shall proceed in the ordinary course.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. The Magistrate Judge may sua sponte recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915A(b).

Willis is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the clerk's office informed of his current address.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE